**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 19-13602-CJP |
| YOURELO YOUR FULL-SERVICE | ) | |
| RELOCATION CORPORATION, | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |

**MEMORANDUM OF DECISION ON CONFIRMATION**
**OF THIRD AMENDED PLAN OF REORGANIZATION**
**AND OBJECTION TO CLAIM OF CREDITOR CITY OF REVERE**

Devyap Realty Group, Inc. ("Devyap" or the "Plan Proponent"), the third-party plan

proponent, insider, and unsecured creditor of the debtor Yourelo Your Full-Service Relocation

Corporation (the "Debtor"), seeks confirmation of *Devyap Realty Group, Inc.'s Third Amended*

*Plan of Reorganization* [ECF No. 126] (the "Plan").  No party objected to confirmation and no

creditors were entitled to vote on the Plan because all classes of creditors are unimpaired and are

deemed to have accepted the Plan under 11 U.S.C. § 1126.[1]  The Plan provides for full payment

of the allowed claim of the City of Revere (the "City"), which Devyap estimates to be no greater

than $438,985.13 in the Plan, without any admission that any claim should be allowed.  Devyap

has objected [ECF No. 145] (the "Claim Objection") to allowance of the City's claim, the latest

amended iteration of which, Claim No. 6-4  (the "Claim"), is asserted as a secured claim totaling

$596,443.28.  The resolution of the Claim Objection and the amount that Devyap will need to

pay to satisfy the City's Claim upon confirmation is the focus of this decision.

---

[1] Unless otherwise noted, all section references herein are to Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended (the "Bankruptcy Code" or "Code").

After a preliminary hearing on the Claim Objection, the City's response thereto [ECF No. 150], and Devyap's reply [ECF No. 156], and further briefing by the parties,[2] the parties conducted discovery, and the Court made oral tentative rulings narrowing the remaining issues that required further briefing and evidentiary support. *Tentative Rulings Read into the Record on Aug. 25, 2022* [ECF No. 181] (the "Tentative Rulings"). The parties filed additional pre-trial briefs to present the remaining issues before the Court with respect to the Claim Objection.[3] After a two-day trial on the Claim Objection and confirmation at which five witnesses testified and fourteen exhibits were admitted into evidence,[4] Devyap submitted a proposed confirmation order and the parties filed post-trial briefs, replies, and proposed findings of facts and rulings of law.[5] The docket reflects numerous additional briefs, memoranda, oppositions, affidavits, statements, and supplemental documents filed on various dates in connection with the Claim Objection and confirmation that were considered, together with the entire record in this case, in entering these findings and rulings regarding the Claim Objection and confirmation of the Plan.[6] Based on the evidentiary record at trial, the entire record of this case, and for the reasons set forth

---

[2] *Brief of City of Revere Pursuant to Court's January 28, 2022 Order* [ECF No. 169]; *Devyap Realty Group, Inc.'s Supplemental Brief in Support of Its Objection to the City of Revere's Amended Proof of Claim* [ECF No. 170].

[3] *City of Revere's Pre-Trial Memorandum* [ECF No. 203]; *Devyap Realty Group Inc.'s Pre-Trial Brief in Support of Its Objection to the City of Revere's Claim* [ECF No. 204].

[4] Citations to exhibits admitted into evidence at the trial shall be to "Ex. __." Citations to the trial transcript shall reference the trial day and relevant page number(s) of testimony. Citations to items on the docket shall be to "ECF No. __."

[5] *Devyap Realty Group Inc.'s Post-Trial Brief in Support of Its Objection to the City of Revere's Claim* [ECF No. 250]; *Proposed Order Confirming Devyap Realty Group Inc.'s Third Amended Plan of Reorganization* [ECF No. 251]; *City of Revere's Post-Trial Brief* [ECF No. 253] ("City's Post-Trial Brief"); *City of Revere's Reply Brief* [ECF No. 255]; *City of Revere's Proposed Findings of Fact and Rulings of Law* [ECF No. 256]; *Devyap Realty Group Inc.'s Reply Brief in Support of Its Objection to the City of Revere's Claim* [ECF No. 258].

[6] Devyap filed a motion to strike the City's Proposed Findings of Fact and Rulings of Law [ECF No. 259] as being untimely, and the City filed an opposition [ECF No. 260]. The Court will enter a separate order denying the motion to strike.

below, the Claim Objection is sustained in part and overruled in part, and I will enter an order

confirming the Plan.

## I.   BACKGROUND FINDINGS[7]

The Debtor filed a voluntary chapter 11 petition on October 23, 2019 (the "Petition

Date").  The Debtor operated a moving and storage business and owns property located at 585

North Shore Road, Revere, Massachusetts (the "Property").  There are two buildings on the

Property; one is a metal structure that has been referred to in testimony as a warehouse space,

and the other is a two-story office building that has been substantially gutted.  Tr. Day 1 of Trial,

Nov. 16, 2023 [ECF No. 241] ("Tr. Day 1"), Ozdemir Test., 31:22-25, 38:1-4.  The Debtor never

occupied the buildings located on the Property.

Kirgiz Realty Group, Inc. ("Kirgiz"), an affiliate of the Debtor, originally purchased the

Property from an entity engaged in the fishing industry by deed dated November 24, 2006,

recorded with the Suffolk County Registry of Deeds at Book 40745, Page 343.  *Id.* at 28:8-12.

At the time Kirgiz purchased the Property, it did not have an occupancy permit for the building,

and it did not apply for an occupancy permit.  *Id*. at 34:15-23.  Kirgiz transferred title to the

Property to the Debtor by deed dated October 11, 2016, recorded with the Suffolk County

Registry of Deeds at Book 57089, Page 90.  Ex. 1.

From the time Kirgiz purchased the Property through the time Kirgiz transferred the

Property to the Debtor, no person or entity operated any business at the Property.  Tr. Day 1,

---

[7] Findings of fact are also incorporated in the discussion.  Any findings of fact that are, in whole or part, rulings of law shall be considered as such and vice versa.  While I may cite to specific supporting evidence in the record, my findings are often supported by additional evidence in the record I have considered, and I do not intend to limit support for my findings to the cited portion of the record.  Further, to the extent that I reference testimony or other evidence that supports my rulings, I have credited that testimony or other evidence even if I have not made an express finding.  Where I have referenced testimony or other evidence that does not support my rulings, I have weighed that evidence, but it has not overcome the weight that I have given to other evidence in the record.

3

Ozdemir Test., 35:12-17.  During the period of Kirgiz's and the Debtor's ownership of the

Property, no person resided at the Property.  *Id.* at 35:21-23; 38:22-25; 39:1-4.  The Debtor has

never had employees working at the Property, except for cleaners who maintained and cleaned

the exterior of the buildings.  *Id.* at 36:12-20.  In or around January 2018, the interior of the

office building at the Property was partially demolished.  *Id.* at 37:9-16.  Throughout the period

during which the Debtor owned the Property, there have been no renovations to the warehouse

and only repairs to the office building's roof.  *Id.* at 38:1-9.  During the period of the Debtor's

ownership of the Property, the Debtor never obtained an occupancy permit to occupy the

Property.  *Id.* at 39:5-9.  Since at least around October 2016, there has been no water service or

electric service to the Property, and the pipes have been removed, apparently by thieves.  *Id.* at

60:7-21; 64:19-24.

      The City recorded an Instrument of Taking on August 21, 2017, with the Suffolk County

Registry of Deeds at Book 58404, Page 178, asserting that the Property was subject to certain

unpaid taxes and other municipal charges.  Ex. 3.  On February 27, 2018, the City filed a

complaint to foreclose the right of redemption in the Land Court (the "Land Court Case").  Ex. 4.

The Land Court entered judgment on September 24, 2019, which the City recorded with the

Suffolk County Registry of Deeds at Book 61846, Page 7 (the "Judgment" or "Foreclosure

Judgment").  Ex. 5.

      After obtaining the Judgment, the City did not change the locks at the Property, and the

Debtor did not surrender keys to the Property to the City.  Tr. Day 1, Ozdemir Test., 118:17-25.

In or around the summer of 2019, the Debtor entered into negotiations with a pallet company,

Revere Pallet, as a potential renter of the metal building on the Property for the purpose of

storage.  *Id.* at 39–40.  It was contemplated that the renter would be responsible for care and

maintenance of that portion of the Property. *Id.* The Debtor and Revere Pallet entered into a Commercial Rental Agreement for the lease of the metal building at the Property as of October 1, 2019 (the "Lease"). Ex. 2. The Debtor terminated the Lease on December 31, 2019, at the demand of the City. Tr. Day 1, Ozdemir Test., 43:9-10. Other than the Lease, the Debtor never leased any portion of the Property to any third party. *Id.* at 46:1-3.

The City filed a *Motion to Vacate Judgment* in the Land Court Case on October 4, 2021, and the Land Court entered an order vacating the Judgment on October 7, 2021. Ex. 12. After the Land Court vacated the Judgment, the Debtor commenced paying the real estate taxes for the Property and paid post-petition real estate taxes until the third quarter of 2023. Tr. Day 1, Ozdemir Test., 59:4-12. A witness for Devyap, its president, Sefer Ozdemir, who is also the corporate secretary of the Debtor, testified that the real estate taxes for the third quarter of 2023 have not been paid by the Debtor because the City has refused to take payment, despite the Debtor's efforts to mail a check. *Id.* at 59:15-18. The City did not introduce evidence that refuted that testimony.

During the period of the City's ownership from September 24, 2019 through October 7, 2021, the Debtor never used or occupied the Property for storage or to materially support operating its moving business, *Id.* at 46:4-12, and the City did not make any renovations to the Property, *Id.* at 58–59. A nonfunctional truck owned by Gentle Movers, an affiliate of the Debtor, and a trailer remained at the Property after the Judgment. *Id.* at 119:12-25; 133:20-22; Tr. Day 2 of Trial, Nov. 17, 2023 [ECF No. 244] ("Tr. Day 2"), Brown Test., 104:7-24; Ex. 11, 18:9-22. The City sent the Debtor a bill for use and occupancy of the Property for the period of the City's ownership, which the Debtor did not pay. Tr. Day 1, Ozdemir Test., at 57:1-12.

## II.    PROCEDURAL HISTORY

Shortly after the Petition Date, the Debtor commenced an adversary proceeding to avoid the City's foreclosure and transfer of title as a fraudulent conveyance and to recover the Property pursuant to §§ 544, 547, 548, and 550 and the Massachusetts Uniform Fraudulent Transfer Act provisions, Mass. Gen. Laws ch. 109A, §§ 5(a)(2) and 6(a).  Compl. (Adversary Proceeding No. 19-01140 (the "Adversary Proceeding" or "AP")).  I denied the City's motion to dismiss the Adversary Proceeding.  *See Yourelo Your Full-Serv. Relocation Corp v. City of Revere (In re Yourelo Your Full-Serv. Relocation Corp.)*, No. 19-13602-CJP, 2020 WL 6927549, at *6–7 (Bankr. D. Mass. Nov. 23, 2020) (the "Motion to Dismiss Decision").  The parties continued to litigate the Adversary Proceeding and pursue certain cross-motions for summary judgment.  The City ultimately withdrew its summary judgment motion and filed a motion to confirm the automatic stay did not preclude the City from voluntarily vacating the Judgment, ECF No. 101 (the "Motion for Comfort Order").  The Debtor filed a motion to stay the Adversary Proceeding after the City filed its Motion for Comfort Order, arguing that the result of the City taking the steps outlined in the Motion for Comfort Order would be effectively the same as the Debtor obtaining the relief sought in its summary judgment motion, rendering the Adversary Proceeding moot.  The Court stayed the Adversary Proceeding for the parties to file an agreed motion to dismiss or a further status report.  The Court also granted the Motion for Comfort Order after no parties opposed relief, Order [ECF No. 105].

After the Land Court vacated the City's Judgment in October 2021 and in accordance with the order staying the Adversary Proceeding, the parties filed a joint *Stipulation of Dismissal* [AP ECF. No. 158] (the "Stipulation of Dismissal" or "Ex. 14") of the Adversary Proceeding. The Stipulation of Dismissal states both parties "stipulate . . .  to the dismissal *with prejudice*, of

the claims asserted in this adversary proceeding, with all parties waiving all rights of appeal, and all parties bearing their own costs and attorneys' fees." Stipulation of Dismissal at 1 (emphasis in original). Counsel to the City agreed to the form of the Stipulation of Dismissal and authorized it to be signed and filed on behalf of the City. *Id.* at 2 n.1; Tr. Day 2, Brown Test., 134:10-13; Tr. Day 2, Fencer Test., 141:8-14. Counsel to the City testified, however, that despite authorizing the Stipulation of Dismissal to be filed with his electronic signature, he did not review the contents of the Stipulation of Dismissal and instead delegated the responsibility to an associate at his firm. Tr. Day 2, Brown Test. 113–14; 134–35.

After Devyap filed the Plan, the City filed an amended proof of claim, Claim No. 6-2, and Devyap filed the Claim Objection.[8] The City asserted a total claim in the amount of $832,672.82 that included (i) unpaid real estate taxes assessed on the Property prior to the Petition Date in the amount of $50,622.51, (ii) post-petition taxes, (iii) fines arising from sanitary code violations (the "Sanitary Code Fines"), (iv) prepetition and/or post-petition interest accruing on these foregoing categories, and (v) post-petition legal fees and costs. Claim No. 6-2. The City asserted at least $794,600 of Claim No. 6-2 was secured, an amount equal to the value of the Property as assessed by the City, and the remainder was unsecured. Claim No. 6-2. According to Devyap, the City's claim should be disallowed in its entirety because, among other things, the unpaid taxes, interest, fines, and attorneys' fees that were secured by the City's prepetition tax lien on the Property were satisfied upon entry of the Foreclosure Judgment. Claim Obj. at 2–3.

The Court held a hearing on the Claim Objection and confirmation and issued the Tentative Rulings on August 25, 2022. The Tentative Rulings included, *inter alia*, the

---

[8] The City filed a second amended proof of claim for $930,146.50 on October 31, 2022. Claim No. 6-3. The City filed the Claim on January 26, 2024, as described in greater detail *infra*. Claim No. 6-4.

preliminary determination that the vacatur of the Foreclosure Judgment effectively revived the preexisting tax lien and claim.  The Tentative Rulings narrowed the issues of fact and law to the following: (i) the value of the estate's interest in the Property; (ii) whether, after transfer of title, the City owned the Property exclusive of the Debtor's use or occupancy; (iii) whether the City may include in its Claim the taxes assessed against the Debtor during the period that the City held title to the Property; (iv) whether the City waived its legal fees accrued in the Adversary Proceeding by express language in its joint Stipulation of Dismissal with the Debtor; (v) whether the Property contained a "dwelling unit" for the purposes assessing the Sanitary Code Fines; (vi) what portion of the City's claim should be allocated between unpaid taxes and the Sanitary Code Fines; and (vii) whether any of the Sanitary Code Fines apply to Kirgiz instead of the Debtor.

After the parties conducted discovery on these issues, the Court conducted a two-day trial on confirmation of the Plan and the Claim Objection.  At trial, after review of evidence presented, including photographs from within the Property and witness testimony, the Court made preliminary findings and rulings that (i) the Property is commercial in nature, (ii) the Property lacks a dwelling unit within a residence as contemplated by the sanitary code, 105 Mass. Code Regs. § 410.000, *et seq*., and (iii) therefore, the City could not include Sanitary Code Fines in its claim because the sanitary code excludes commercial buildings.  Tr. Day 2, 125–29; *see* 105 Mass. Code Regs. § 410.000, *et seq.* (2023); *Bishop v. TES Realty Tr.*, 459 Mass. 9, 13 n.6 (2011) (in the context of determining whether Mass. Gen. Laws ch. 186, § 19 (the provision imposing a duty of reasonable care on landlord to remedy unsafe conditions) applies in the commercial context, recognizing that that "the State sanitary code does not apply to commercial properties" (citations omitted)).  After that ruling, the City filed its Claim in the amount of $596,443.28 that excluded the Sanitary Code Fines.  Claim No. 6-4.

## III.  DETERMINATION OF THE CITY'S CLAIM

The Bankruptcy Code provides: "[a] claim . . ., proof of which is filed under section 501

of [the Bankruptcy Code], is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. §

502(a).  "A proof of claim executed and filed in accordance with [the Federal Rules of

Bankruptcy Procedure] shall constitute prima facie evidence of the validity and amount of the

claim."  Fed. R. Bankr. P. 3001(f).  As this Court has previously stated:

> In order to rebut this prima facie evidence, the objecting party must produce
> "substantial evidence." *United States v. Clifford (In re Clifford)*, 255 B.R. 258,
> 262 (D. Mass. 2000) (citing *In re Hemingway Transp.*, 993 F.2d at 925). If the
> objecting party produces substantial evidence in opposition to the proof of claim,
> and thereby rebuts the prima facie evidence, the burden shifts to the claimant to
> establish the validity of its claim. *In re Hemingway Transp.*, 993 F.2d at 925
> ("Once the trustee manages the initial burden of producing substantial evidence ...
> the ultimate risk of nonpersuasion as to the allowability of the claim resides with
> the party asserting the claim.").
>
> The "substantial evidence" that the objecting party must produce in order to rebut
> the claim's prima facie validity is "evidence which, if believed, would refute at
> least one of the allegations that is essential to the claim's legal sufficiency." *In re
> Everett*, No. 10-19457 (FJB), 2013 WL 3757283, at *5 (Bankr. D. Mass. July 15,
> 2013) (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992)).
> This means that an "objector must produce evidence equal in force to the prima
> facie case." *Tracey v. United States (In re Tracey)*, 394 B.R. 635, 639 (B.A.P. 1st
> Cir. 2008) (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d at 173). "If the objection
> contains such evidence, the claimant "is required to come forward with evidence
> to support its claims ... and bears the burden of proving its claims by a
> preponderance of the evidence." *Id*. at 639 (quoting *In re Organogenesis, Inc.*,
> 316 B.R. 574, 583 (Bankr. D. Mass. 2004)). "[I]n view of the prima facie validity
> of the claim, the claimant's burden of ultimate persuasion (answering an objection
> supported by sufficient evidence) is a burden of persuasion only as to the
> particular objection, of establishing that the defect alleged in the objection either
> does not exist or is no defect." *Lyman-Cutler, LLC v. Kagan (In re Lyman-Cutler,
> LLC)*, 632 B.R. 355, 411–12 (Bankr. D. Mass. 2021).

*Kalaydzhan v. Ross (In re Kalaydzhan)*, 660 B.R. 1, 12 (Bankr. D. Mass. 2024).  Devyap has

introduced substantial evidence rebutting the City's Claim.  Consequently, the City has the

burden of proving the allowability of its Claim by preponderance of the evidence.

I adopt my Tentative Rulings determining that vacatur of the Foreclosure Judgment by the City revived its lien and claim as to the Property as they existed immediately prior to entry of the Foreclosure Judgment. The City's allowed claim will include all assessed and unpaid real estate taxes and any water and sewer charges and interest at the statutory rate under Massachusetts law as of September 24, 2019 (collectively, the "Pre-Foreclosure Tax Claim"). After considering the assessed value and the amount committed by Devyap to gain control of the Property through funding the Plan, I find that the reorganization value of the Property is substantially more than $600,000. As such, the cap on a tax claim under § 502(b)(3) does not limit the amount of the City's Pre-Foreclosure Tax Claim, and that claim must include interest at the statutory rate under Massachusetts law from September 24, 2019 through the Effective Date of the Plan (the "Post-Foreclosure Interest Claim").

As I ruled on the record at the trial, any claims for fines for violation of the sanitary code or interest thereon are disallowed, and the Claim Objection is sustained as to those amounts for the reasons stated at the time of the ruling and as reiterated in Part II *supra*. *See also* Tr. Day 2, 125–29.

By its Claim, the City also seeks to recover as a secured claim amounts that <u>would have been</u> assessed after September 24, 2019 had the City not recorded the Foreclosure Judgment and the Debtor retained title to the Property after that date. The Claim asserts a total debt of $596,443.28, consisting of the following costs under Mass. Gen. Laws ch. 60, § 68 of $161,594.82 for the "Tax Title account" (presumably pre-foreclosure taxes, post-foreclosure taxes, interest, and charges, of which approximately $46,000 would be attributable to taxes that would have been assessed had the City not foreclosed), plus legal fees of $436,190.46,[9] which

---

[9] Although the City claims $436,190.46 for services October 2017 through November 2023, the invoices attached to the City's Claim are dated October 2017 through September 2022 and total $363,949.21. The City's Post-Trial

amounts actually total $597,785.28.  I must decide whether the City may assert a claim for the

taxes that would have been assessed had the City not foreclosed and whether the legal fees could

be added to a tax title and are reasonable.

### A.  The City's Post-Foreclosure Tax Claim

Mass. Gen. Laws ch. 60, § 77 provides that "[a]fter foreclosure by a town of the rights of

redemption under a tax title or taking, as hereinbefore provided, the land shall thereafter be held

and disposed of like any land belonging to it and held for municipal purposes, and shall not while

so held be assessed for taxes."  Mass. Gen. Laws ch. 60, § 77.  This provision prohibits any

assessment "for taxes" while the City held title to the Property, but it does not address collection

of amounts that would have been assessed in the context of a redemption or if a foreclosure

judgment is vacated.

In *Tallage Lincoln, LLC v. Williams*, the Supreme Judicial Court summarized in detail

"the archaic and arcane process of tax lien foreclosure" in the Commonwealth of Massachusetts.

485 Mass. 449, 450 (2020).  With respect to entry of a foreclosure judgment at the end of the

process, the court stated:

> If the taxpayer does not timely respond to the petition or fails to redeem the
> property according to the terms fixed by the Land Court, the court may enter
> judgment foreclosing the right of redemption. Upon entry of such judgment, the
> municipality or private party assignee takes absolute title to the property. G. L. c.
> 60, § 69.
> . . .
> Although G. L. c. 60, § 69, states that entry of the foreclosure judgment "shall
> forever bar all rights of redemption," the taxpayer may move to vacate the
> judgment if he or she pays the redemption amount, plus interest, within one year.
> G. L. c. 60, § 69A. After one year, the judgment is final and can be vacated only

Brief provides invoices through November 2023 and asserts the legal fees can be broken down as follows:
$22,761.27 for pre-bankruptcy petition legal fees, $245,511.69 for legal fees related to the Adversary Proceeding,
and $158,917.50 for legal fees related the bankruptcy proceeding.  City's Post-Trial Brief at 14.  The combined total
of the preceding three amounts is $436,190.46, but the City lists a total of $434,848.46 in its brief.  *Id.*

upon a showing of a denial of due process. *See North Reading v. Welch*, 46 Mass. App. Ct. 818, 819-820, 711 N.E.2d 603 (1999).

*Id*. at 452–53. The statute further provides "[i]f no innocent purchaser for value has acquired an interest [after entry of a foreclosure judgment], such decree may be vacated in the discretion of the court upon petition filed by the petitioner at any time." Mass. Gen. Laws ch. 60, § 69.

The parties agree that only one reported decision addresses whether a municipality may collect taxes and interest that would have been assessed during the time when that municipality held title to a property after a tax foreclosure. In *Town of Russell v. Barlow*, the Massachusetts Land Court held, on motion of property owners to vacate a foreclosure judgment more than one year after the judgment entered, that the plaintiff property owners were deprived of their due process rights during the original foreclosure action and the judgment would be vacated. *Town of Russell v. Barlow*, No. 03 TL 130055 (RBF), 2016 WL 3745960, at *21 (Mass. Land Ct. July 13, 2016). In *Barlow*, the Land Court ordered the plaintiffs to pay an amount to redeem their property from the town's tax taking consisting of taxes and statutory interest through the date of the foreclosure judgment but, for equitable reasons, not interest accruing on that amount after the date of the foreclosure judgment. While the redemption amount did not include any amount of post-foreclosure taxes or interest on post-foreclosure taxes, the Land Court appears to have fashioned an equitable remedy by ordering that all amounts of post-foreclosure taxes, without interest, would become due once the plaintiffs paid the redemption amount as set forth in its order. *See Barlow*, 2016 WL 3745960, at *21 (holding "[i]f the Barlows successfully redeem, taxes assessed from the date of the 2008 judgment to the date of redemption will become outstanding; the fiscal year in which the remaining unpaid taxes from the 2008 judgment to the date of redemption were payable is hereby deemed to be the fiscal year of the date of redemption, and interest on those unpaid taxes shall be calculated accordingly pursuant to G.L. c.

59, § 57").   Further, the court established that interest would not be payable on any taxes that would have been assessed during the period when the town had title to the property by deeming all of such taxes to have accrued in the fiscal year in which the property owner would redeem the Property.  *Id.*  The *Barlow* court did not discuss the assessment of taxes during the period when the town had title to the property or the application of Mass. Gen. Laws ch. 60, § 77.

Devyap argues that the holding in *Barlow* was implicitly premised on a determination that the underlying judgment was void and of no legal effect because the property owner had been deprived of due process.  Therefore, Devyap contends that Mass. Gen. Laws ch. 60, § 77 did not bar the assessment of taxes on the subject property in *Barlow* from the time the foreclosure judgment was entered until the plaintiff redeemed the property from the tax taking. Devyap asserts that, in this case, where the Foreclosure Judgment was not determined to have been entered without due process upon motion by the taxpayer, but rather was simply voluntarily vacated on motion of the City, the result in *Barlow* should not be applied to override the effect of Mass. Gen. Laws ch. 60, § 77.  Devyap's Supp. Brief [ECF No. 170], at 8–10.  In response to the Claim Objection, the City makes equitable arguments about the Debtor remaining in control and enjoying the use of the Property during period after entry of the Foreclosure Judgment, and, without citing or providing decisional authority on which I might rely, counsel to the City has also represented that the practice in the Massachusetts Land Court is that the City would be allowed to certify those amounts to the tax title account after the Foreclosure Judgment was vacated.  City's Resp. to Claim Obj. [ECF No. 150], at 7–8 (quoting Mass. Gen. Laws ch. 60, §§ 61–62, 68); City's Post-Trial Brief, at 14.

In *Barlow*, the Land Court recognized that:

tax redemption statutes, being remedial in their nature, are interpreted liberally in favor of a person seeking to recover his land.  In keeping with the respect with which our society regards the private ownership of property, the long-standing

policy in this Commonwealth favors allowing an owner to redeem property taken
for the nonpayment of taxes.

*Id.* at *17 (internal citations and quotations omitted).  The Land Court also had the benefit of a

statutory scheme that allowed it to fashion equitable relief when it established the terms of

redemption.  In connection with a foreclosure action on a tax title an entity with an interest in the

property makes an offer to redeem, the court

> may in any case in its discretion make a finding allowing the party to redeem,
> within a time fixed by the court, upon payment to the petitioner of an amount
> sufficient to cover the original sum, costs, interest at the time rate of sixteen per
> cent per annum and all subsequent taxes, cost and interest to which the petitioner
> may be entitled under sections sixty-one and sixty-two, together with the costs of
> the proceeding and such counsel fee as the court deems reasonable.

Mass. Gen. Laws ch. 60, § 68.

Massachusetts law provides the Land Court wide latitude to fashion equitable relief by

"impos[ing] such other terms as justice and the circumstances warrant," such as where a

landowner has offered to redeem.  *Id.*  In this case, the Foreclosure Judgment was vacated

without opposition in the Land Court, and no party in interest opposed the motion in this Court

seeking a comfort order that the automatic stay did not limit the City in moving to vacate the

judgment, in which the City stated its position that post-petition taxes could be assessed.  The

Property is now property of the estate and has returned to "tax title" status under Massachusetts

law.  The Plan proposes to pay the allowed amount of the City's secured claim in full satisfaction

of any municipal liens on the Property.  Under the facts and circumstances of this case, I view

this as the functional equivalent of a redemption under the state statute giving me latitude to

allow a claim for post-foreclosure taxes in the same manner as the Massachusetts Land Court

could impose such terms.

Alternatively, and admittedly a broad interpretation, I also hold that, as of the petition

date, the City possessed a contingent claim to assert additional amounts as part of its tax lien in

the event that the Foreclosure Judgment was vacated and tax title was reinstated.  While not characterized this way in the Claim, the City expressly asserted a claim for post-petition taxes, fines, and interest.  Section 502(c) permits estimation of contingent claims "the fixing or liquidation of which . . . would unduly delay administration of the case[.]"  11 U.S.C. § 502(c).  Here, the contingency has actually occurred, and I may determine or estimate any amount that I predict may have been required by a Massachusetts Land Court to have been paid to redeem the Property "as justice and the circumstances of this case warrant."  Mass. Gen. Laws ch. 60, § 68.  I may also determine whether the Debtor's alleged use and occupancy would give rise to an administrative claim.  I find that both the Debtor and the City exercised some control with respect to the Property after the Foreclosure Judgment.  The Debtor maintained a vehicle at the Property and entered into a lease that was terminated when the City objected.  The Debtor or its affiliates obtained some small benefit and attempted to exercise some control over the Property.  Given the Debtor's historical lack of prepetition use of or activity at the Property, it is difficult to assess the amount of the post-petition benefit derived by the Debtor or its affiliates.  Certainly, the Debtor did not use or occupy the Property to the same extent that the homeowners in *Barlow* did since they resided at and remained in possession of their property after the foreclosure.  *See Barlow*, 2016 WL 3745960, at *21.

It is not clear under bankruptcy law whether a post-petition lien would have arisen for the taxes assessed for the post-petition period before vacatur.  Section 362(b)(9)(D) creates an exception from the automatic stay for assessment of the tax, but it also says that a lien that might arise "shall not take effect" unless certain conditions are satisfied.  One condition is that "the property or its proceeds are transferred out of the estate to, or otherwise revested in, the debtor[.]"  11 U.S.C. § 362(n)(9)(D).  Under the Plan, the Property would vest in Devyap, an insider, not the Debtor; but it may be an immaterial distinction, as the Plan proposes to pay the

City's allowed claim in full and would have to pay in full any administrative claims that would have arisen, whether or not secured by a lien.

After considering the foregoing and the evidentiary record, I overrule the Claim Objection in part as it relates to the portion of the Claim for taxes that would have been assessed after the date of the Foreclosure Judgment through the date that judgment was vacated. The claim for post-foreclosure taxes is allowed in the amount of $23,000, representing 50% of the estimated taxes that would have been assessed during that period, but the portion of the claim for interest or other charges related to such amount is disallowed because no taxes were actually assessed during that period. This achieves a result consistent with *Barlow* in that it adjusts the claim as justice and the circumstances warrant in this case as would be permitted by Massachusetts law in the context of a redemption. While in the context of the claims allowance process the law is less than clear, the result is equitable and consistent with what I predict would be withing the range of what would be determined by a Massachusetts Land Court.

### B. The City's Legal Fees

This leaves the portion of the City's Claim for attorneys' fees to be determined. The City asserts a claim for $436,190.46 in attorneys' fees and expenses comprised of $22,761.27 of prepetition fees, $254,511.69 of fees related to the Adversary Proceeding, and $158,917.50 of fees related generally to the bankruptcy case. Mass. Gen. Laws ch. 60, § 65 states that, upon a motion to foreclose the right of redemption, the legal fees may be added to the tax title account:

> The land court in each petition filed by a city or town may, upon motion, order the payment of legal fees to a city or town, which amount shall be added to the tax title account of the land to which the right of redemption is being foreclosed; in no event shall the legal fees awarded exceed the actual costs incurred and the judge shall consider the taxpayer's ability to pay said fees in any such fee award.

Mass. Gen. Laws ch. 60, § 65.  The City is entitled to reasonable legal fees incurred prior to the

Foreclosure Judgment.  *See Tallage Lincoln, LLC*, 485 Mass. at 452 (in summarizing the tax title

statute, stating that "costs and fees associated with the foreclosure action, including legal fees,

are chargeable to the taxpayer").  Whether the City can add to the "tax title account" after

foreclosing a tax lien is much less clear.  These asserted fees include post-foreclosure, pre-

bankruptcy fees incurred while the City had record title to the Property.  As discussed above, a

Massachusetts Land Court could condition redemption of the Property upon payment of these

amounts.  Because of the amount asserted and for the reasons discussed above, I predict that a

Massachusetts Land Court would require payment.  I have reviewed the prepetition fees of

$22,761.27 and have determined that they are reasonable.

As to the post-petition fees associated with defending the Adversary Proceeding, the City

faces multiple hurdles.  In the Stipulation of Dismissal, the Debtor and City stipulated to dismiss

with prejudice the claims asserted in the Adversary Proceeding, "with all parties waiving all

rights of appeal, and all parties bearing their own costs and attorneys' fees."  Ex. 14.  "In our

judicial system, '[s]tipulations fairly entered into are favored.'"  *TI Fed. Credit Union v.

DelBonis*, 72 F.3d 921, 928 (1st Cir. 1995) (as to factual stipulations entered into to facilitate

litigation) (quoting *Burstein v. United States*, 232 F.2d 19, 23 (8th Cir. 1956)).  "Litigation

stipulations can be understood as the analogue of terms binding parties to a contract."  *Id.*; *see

also Hester Indus., Inc. v. Tyson Foods, Inc.*, 160 F.3d 911, 916 (2d Cir. 1998) (stipulations

entered into by mutual agreement of parties).  "Once entered, parties are 'not generally free to

extricate themselves . . . [unless] it becomes apparent that it may inflict a manifest injustice upon

one of the contracting parties.'"  *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 32 (1st Cir. 2007)

(quoting *TI Fed. Credit Union*, 72 F.3d at 928) (internal quotations and citations omitted)).

While the City offered testimony and argued that it had no intention to waive its claim for attorneys' fees and expenses relating to the Adversary Proceeding when it entered into the Stipulation of Dismissal, the language of the stipulation is not ambiguous and constituted a waiver of any claim to recover fees and expenses incurred in connection with the Adversary Proceeding.

Moreover, it is unclear that fees incurred in defending a fraudulent conveyance claim with respect to the Property could be assessed or added to a tax title account. The Massachusetts statute does not appear to have a mechanism to assess legal fees and expenses after a tax foreclosure. Mass. Gen. Laws ch. 60, § 65 only addresses pre-foreclosure fees. While a Massachusetts Land Court may have broad discretion in the context of a redemption, the Supreme Court's ruling in *Tyler v. Hennepin County*, 598 U.S. 631 (2023) and this Court's Motion to Dismiss Decision cast doubt on whether a Massachusetts court would award these fees as a condition to redemption of the Property. The fraudulent conveyance claims asserted in the Adversary Proceeding for the benefit of the estate are not claims that could have been asserted in a state court. I rule that there is no statutory basis for these fees and expenses to be allowed as part of the City's claim and no equitable basis to do that even if I assume that a Massachusetts Land Court could do that. I would also find that fees in the amount of $254,511.69 were not reasonable after considering the issues presented, the services provided, and the activity in the Adversary Proceeding. Enforcing the waiver and, alternatively, in consideration of the other factors that I have discussed, I will sustain the Claim Objection as to the legal fees associated with the Adversary Proceeding and disallow those fees.

The fees incurred by the City generally in connection with the bankruptcy case present similar issues since there is no statutory mechanism to assess fees or add them to a tax title

18

account during the period when the City held title to the Property.  For the reasons discussed above in relation to assertion of a claim based on taxes that would have been assessed during that period, reasonable post-petition legal fees may be included in the City's Claim.  *See* Mass. Gen. Laws ch. 60, § 65.  The City's Claim is oversecured, and Devyap has consistently asserted that the entirety of the City's Claim should be disallowed—even amounts that accrued prepetition and pre-foreclosure.  In the bankruptcy case, the City has incurred significant legal fees[10] in response to the Claim Objection, parts of which I have already sustained *supra*,[11] in its efforts to collect unpaid taxes.

I have considered whether legal fees asserted by the City could be identified that relate exclusively to the City's attempt to collect either the Sanitary Code Fines or post-foreclosure taxes if they had been assessed had the City not acquired title through the Foreclosure Judgment; I could not distinguish the legal fees in this respect.  Instead, I have considered the fact that Devyap has objected to even the pre-foreclosure tax claim asserted by the City.  When I consider the rates and adjust the hours for legal services, I believe there is an amount a Massachusetts Land Court would order be paid pursuant to redemption or added to the restored tax title that this Court would also find is reasonable for the services undertaken.  *See Tallage Lincoln, LLC*, 485 Mass. at 452; *Barlow*, 2016 WL 3745960, at *20.  The rates charged to the City were very reasonable in the Massachusetts legal market.  However, the time spent on tasks seemed excessive for certain entries or unrelated to the collection of real estate taxes or municipal charges.  As an example, not intended to be comprehensive, counsel expended more than twenty-five hours researching and analyzing a motion to extend the exclusivity period.  *See* City's Post-

---

[10] *See* City's Claim; City's Post-Trial Brief, Attachment (attaching invoices through November 2023).

[11] *See Barlow*, 2016 WL 3745960, at *20 (determining the Town was not entitled to legal fees incurred after the Barlows filed a motion to vacate the foreclosure judgment because "the Barlows [were] a prevailing party").

Trial Brief, Attachment at 37–38.  After reviewing the non-Adversary Proceeding post-petition time entries and considering the tasks and time expended, I find that the post-petition legal fee portion of the Claim in the amount of $158,917.50 is not reasonable and will be reduced to $145,000.00.

## IV.   CONFIRMATION OF THE PLAN

The Plan classifies claims into three classes:

| Class | Designation |
| --- | --- |
| 1 | City of Revere Claim |
| 2 | General Unsecured Claims |
| 3 | Equity Interests in the Debtor |

Plan, §§ 2.1–2.3.

The City's claim is treated in Class 1 and the Plan proposes the following treatment, based on the City's original proof of claim:

a.   The City of Revere alleges that it is currently the holder of a pre-petition tax lien on the real property located at 585 North Shore Road, Revere, MA.

b.   The City of Revere has filed a proof of claim alleging that it was owed $438,985.13 as of the Petition Date. The City of Revere also asserts that it is entitled to post-petition interest and attorneys' fees. Devyap disputes the validity of this assertion as well as the amount and nature of the claim. For the purposes of calculating the Confirmation Escrow Deposit, Devyap estimates that the amount that will be required to satisfy the City of Revere's Claim will not exceed $438,985.13.

c.   Devyap shall pay the full amount of the City of Revere's Allowed Claim either: (i) on the Effective Date if such claim becomes an Allowed Claim by a final nonappealable order of the Bankruptcy Court prior thereto; or (ii) if the City of Revere's claim remains a Disputed Claim on the Effective Date, within fourteen (14) days following the date on which the City of Revere's claim becomes an Allowed Claim by a final non-appealable order of the Bankruptcy Court.

d.   The City of Revere is not impaired.

Plan, § 4.1.  There is no deficiency component of the City's claim, and it is treated entirely in

Class 1.  *See id.*  There are no objections to confirmation of the Plan.

The City shall have an allowed secured claim in an amount equal to the amounts

determined above.  The City's allowed claim will include the following: the amount of pre-

foreclosure taxes assessed, plus interest through the Effective Date of the Plan at the applicable

statutory rate; the amount of post-foreclosure taxes that would have been assessed, without

interest or costs; the amount of post-petition taxes that the Debtor attempted to tender but the

City would not accept and any other post-petition, post-vacatur unpaid taxes, without interest or

penalty; and legal fees of $167,761.27 (comprised of $22,761.27 prepetition and $145,000.00

post-petition fees).[12]

I find that, no objections to confirmation having been filed, with the Claim Objection

determined and the allowed amount of the City's claim established, and having independently

reviewed all § 1129 requirements, Devyap has met its burden to show by a preponderance of the

evidence that it has met the requirements of § 1129 and the Plan will be confirmed.  *See, e.g.*, *In

re NESV Ice, LLC*, 661 B.R. 427, 435 (Bankr. D. Mass. 2024) (noting that a plan proponent

"must prove by a preponderance of the evidence that the Plan satisfies each requirement of §

1129(a)" and that "[t]he Court has an independent obligation to ensure that the plan satisfies the

§ 1129 requirements" (citations omitted)).  Within fourteen (14) days of the date of this

Memorandum of Decision, Devyap shall confer with the City and file a proposed form of order

---

[12] Because the Plan requires payment in full of secured and administrative claims, for convenience I have treated the
entire claim of the City as a secured claim even though there are components that would normally be considered an
administrative claim, such as the post-petition post-foreclosure taxes allowed by this Memorandum of Decision and
the post-vacatur unpaid real estate taxes.

21

setting forth the allowed amount of the City's claim.  The Court will enter a separate order

confirming the Plan.

Dated: October 11, 2024                                    By the Court,

                                                          Christopher J. Panos
                                                          United States Bankruptcy Judge